**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CRIMINAL ACTION |
| v. ) | |
| ) | No. 08-20160-08-KHV |
| FRANCISCO PEREA, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**MEMORANDUM AND ORDER**

On December 3, 2009, the Court held a hearing and overruled the Motion To Withdraw (Doc. #217) which defense counsel Rosa Elena Sahagun filed December 2, 2009. The Court directed Ms. Sahagun to show cause in writing why she should not be subject to professional discipline and ordered to pay to the Court all funds which she received on behalf of her client, Francisco Perea. Specifically, the Court directed counsel to explain why she did not file a motion to withdraw until five days before trial, why she did not fully review discovery with her client and why she was not prepared for trial on December 7, 2009. On December 7, 2009, the Court held a hearing on the order to show cause. For reasons stated below, the Court orders that Ms. Sahagun pay to the Clerk of the Court as sanctions in this case the sum of $6,000.

**Findings Of Fact**

On March 26, 2009, a grand jury returned a second superseding indictment which added defendant to a charge of conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine. See Second Superseding Indictment (Doc. #62).

On July 24, 2009, law enforcement officers arrested defendant. At an initial hearing that day, the magistrate judge appointed Jacquelyn E. Rokusek to represent defendant. On or about August 3,

2009, defendant's sister, Veronica Perea, arranged to have Ms. Sahagun represent defendant.[1] Ms. Sahagun is admitted to practice in the State of California and has an office in Riverside, California. On August 4, 2009, Ms. Rokusek filed a motion to withdraw.

On August 25, 2009, the Court held a hearing on Ms. Rokusek's motion to withdraw. At that hearing, Ms. Sahagun appeared and represented to the Court that she would start to negotiate immediately with government counsel so that she and her client could decide whether the case would result in a plea or proceed to trial. Ms. Sahagun also assured the Court that she was prepared to do what was necessary to meet the then current deadlines – including a scheduled trial date of October 13, 2009. Based on these representations, the Court sustained Ms. Rokusek's motion to withdraw and allowed Ms. Sahagun to appear pro hac vice. Ms. Sahagun hired G. Gordon Atcheson as local counsel to represent defendant.[2] Ms. Sahagun instructed Mr. Atcheson that all substantive communications with defendant would go through her.

By e-mail, on September 8, 2009, government counsel informed Ms. Sahagun of the government's standard plea offer and asked Ms. Sahagun to respond with any interest in a plea. The e-mail included a summary of the plea offer, but did not include the formal written plea agreement.

By e-mail, on September 16, 2009, Ms. Sahagun advised the deputy clerk that the case would most likely be a plea but that counsel would travel to Kansas City to confirm this fact with her client on October 1 or 2, 2009. On September 30, 2009, a grand jury returned a third superseding indictment against defendant.

---

[1] The fee agreement required Ms. Perea to pay Ms. Sahagun a $25,000 retainer plus travel expenses. To date, Ms. Perea has paid Ms. Sahagun only $17,000 plus some travel expenses.

[2] Ms. Sahagun paid Mr. Atcheson $5,000 to represent defendant as local counsel in this matter.

On October 1, 2009, the Court held a hearing on the government's motion for defendants to supply voice exemplars. At that hearing, Mr. Atcheson appeared for defendant. Ms. Sahagun did not appear.

On October 6, 2009, Mr. Atcheson and Ms. Sahagun filed a motion to continue the trial set for October 13, 2009. Counsel noted that the government had recently filed a superseding indictment which changed the ending date of the alleged conspiracy and added substantive offenses.[3] Counsel also noted that in late September of 2009, the government had produced about 300 pages of discovery, a video tape and various audio tapes related to the charges in the superseding indictment. On October 7, 2009, the Court sustained defendant's motion to continue and continued trial until December 7, 2009.

On October 29, 2009, Ms. Sahagun traveled to Kansas City and visited defendant about his case including discovery which the government had produced. On November 7, 2009, Ms. Sahagun reviewed discovery materials including audio tapes. By e-mail, on November 9, 2009, Ms. Sahagun advised the Court's deputy clerk that she would follow up with respect to a hearing for a change of plea within the next week.

By e-mail, on November 20, 2009, Ms. Sahagun advised the deputy clerk that she would be filing a motion to withdraw in the next 48 hours. On November 24, 2009, Ms. Sahagun reviewed the file and discussed the case with defendant's family.

---

[3] In particular, the third superseding indictment changed the ending date from March 20 to July 23, 2009 and added charges against defendant for distribution of five grams or more of methamphetamine on November 25, 2008 (Count 5), possession with intent to distribute five grams or more of methamphetamine on July 23, 2009 (Count 6), using and carrying a firearm during and in relation to a drug trafficking crime on July 23, 2009 (Count 7), possession of a firearm by an alien who is unlawfully in the United States (Count 8) and perjury for his testimony on July 24, 2009 at his initial hearing in this case (Count 9).

On December 2, 2009 – five days before trial – Ms. Sahagun filed a motion to withdraw. See Motion To Withdraw (Doc. #217). On December 3, 2009, the Court held a hearing on the motion and overruled it.[4] The Court also directed Ms. Sahagun to show cause in writing why she should not be subject to professional discipline and ordered to pay to the Court all funds which she had received on behalf of her client. Specifically, the Court directed counsel to explain why she did not file a motion to withdraw until five days before trial, why she did not fully review the discovery with her client and why she was not prepared for trial on December 7, 2009. At the hearing, the Court allowed Mr. Atcheson to withdraw as local counsel and re-appointed Ms. Rokusek to represent defendant. By the end of the day on December 3, 2009, Ms. Rokusek secured a formal plea offer from government counsel.

On December 7, 2009, the Court held a hearing on the order to show cause. At that hearing, Ms. Sahagun orally asked to withdraw as counsel for defendant. The Court took that motion under advisement.

On December 11, 2009, Ms. Rokusek notified the Court's deputy clerk that defendant wanted to enter a plea of guilty. On December 15, 2009, defendant pled guilty.

## Analysis

**I.  Authority To Impose Sanctions**

This Court has adopted the Kansas Rules of Professional Conduct, as promulgated by the Supreme Court of Kansas, as the applicable standards of professional conduct. See D. Kan. Rule 83.6.1. The Court has inherent authority to sanction parties and their attorneys, a power born of the practical necessity that courts be able to manage their own affairs so as to achieve the orderly

---

[4]  Ms. Sahagun appeared by telephone at the hearing.

and expeditious disposition of cases. Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991); Revson v. Cinque & Cinque, 221 F.3d 71, 78 (2d Cir. 2000). The Court may impose sanctions against a party or an attorney who "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers, 501 U.S. at 45-46; Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 258-59 (1975). Federal courts also possess inherent authority to sanction both attorneys and litigants for conduct that amounts to abuse of the judicial process. See Roadway Express, Inc. v. Piper, 447 U.S. 752, 766 (1980); Morris v. Adam-Millis Corp., 758 F.2d 1352, 1357 n.7 (10th Cir. 1985). This inherent authority "extends to a full range of litigation abuses," Chambers, 501 U.S. at 46, including attorneys who violate the Rules of Professional Conduct.[5] See Hammond v. City of Junction City, Kan., 126 Fed. Appx. 886, 889 (10th Cir. 2005) (magistrate judge did not exceed jurisdiction when he imposed sanctions for violation of Rule 4.2 of Kansas Rules of Professional Conduct); Myers v. Colgate-Palmolive Co., 173 F.R.D. 296, 300 (D. Kan. 1997) (sanctions for violation of Model Rules of Professional Conduct may include report to state disciplinary authority, monetary sanctions or other appropriate sanctions); see also Chambers, 501 U.S. at 43 (federal court has power to control admission to its bar and to discipline attorneys); In re Snyder, 472 U.S. 634, 645 n.6 (1985) (state

---

[5] Ms. Sahagun is admitted to practice in this Court for purposes of this particular case under Rule 83.5.4 of the Local Rules for the District of Kansas. In applying for admission pro hac vice, Ms. Sahagun consented "to the exercise of disciplinary jurisdiction by this court over any alleged misconduct that occurs during the progress of th[is] case." D. Kan. Rule 83.5.4(c); see Affidavit In Support Of Motion For Leave To Appear Pro Hac Vice ¶ 5 (consent to exercise of disciplinary jurisdiction), attached to Motion For Leave To Appear Pro Hac Vice (Doc. #151) filed August 24, 2009. The local rules of this Court set forth a procedure for complaints of attorney misconduct. See D. Kan. Rule 83.6.2, 83.6.3(a). The local rules do not, however, preclude the Court from exercising its inherent authority to discipline attorneys. See D. Kan. Rule 83.6.12(a) (nothing in rules shall deprive court of inherent power to regulate admission, practice and discipline of attorneys practicing before it); see also Harlan v. Lewis, 982 F.2d 1255, 1261 (8th Cir. 1993) (state disciplinary authorities may act in such cases if they choose but this does not limit power or responsibility of district court).

code of professional responsibility did not by its own terms apply to attorney sanctions in federal courts, but in exercising inherent power under standards imposed by federal law, federal court may charge attorneys with the knowledge of and conformity to state codes); Roadway, 447 U.S. at 766 (power of court over members of its bar is at least as great as its authority over litigants); Fink v. Gomez, 239 F.3d 989, 991-992 (9th Cir. 2001) (sanctions may be imposed under court's inherent authority for "bad faith" actions which include broad range of "willful improper conduct"); Carlucci v. Piper Aircraft Corp., 775 F.2d 1440, 1447 (11th Cir. 1985) (even absent explicit legislative enactment, court has power to impose reasonable and appropriate sanctions upon errant lawyers practicing before it). This Court's "inherent power" to sanction errant lawyers "can be invoked even if procedural rules exist which sanction the same conduct."[6] Chambers, 501 U.S. at 49.

## II. Counsel's Conduct

In light of the scheduled trial date of December 7, 2009, counsel's preparation after October 29 was entirely inadequate.[7] More important, however, Ms. Sahagun never informed defendant of the government's standard plea offer on September 8 and never inquired further with

---

[6] Ms. Sahagun argues that any rights and remedies under the attorney fee contract remain between the parties. Ms. Sahagun asserts that because her client was a third party beneficiary of the fee contract, the Court has no jurisdiction over the terms of said contract with respect to fees. The Court reviews the fee contract only as background and to help determine the amount of sanctions. This order does not address the parties' rights and remedies under the fee contract. Cf. Chambers, 501 U.S. at 54 (district court did not attempt to sanction petitioner for breach of contract, but rather imposed sanctions for fraud and bad faith during litigation).

[7] After October 29, Ms. Sahagun worked on the case on only two occasions: 4.5 hours on November 7 to review various discovery materials and 1.67 hours on November 24 to review the file and discuss the case with defendant's family.

government counsel about a formal plea offer and agreement.[8] Counsel's conduct in this regard was a gross dereliction of her professional obligations under Rules 1.3 and 1.4 of the Kansas Rules of Professional Conduct.  See Kan. R. Prof. Conduct Rule 1.3 (lawyer shall act with reasonable diligence and promptness in representing client); Comment 1 to Rule 1.3 (lawyer should pursue matter on behalf of client despite personal inconvenience to lawyer); Comment 3 to Rule 1.3 (unless relationship terminated as provided in Rule 1.16, lawyer should carry through to conclusion all matters undertaken for client); Rule 1.4(b) (lawyer shall explain matter to extent reasonably necessary to permit client to make informed decisions); see also Rule 1.8(f) (lawyer shall not accept compensation from third party unless there is no interference with lawyer's independence of professional judgment or with client-lawyer relationship); Rule 5.4(c) (lawyer shall not permit non-client who pays lawyer to direct or regulate lawyer's professional judgment with respect to client).[9] Counsel's conduct is particularly troubling in light of her representations to the deputy clerk on September 16, 2009 and November 9, 2009 that a plea was likely and that she would advise the Court of a hearing date.  Ms. Sahagun never shared this information with government counsel or defendant – two obviously critical participants in any change of plea hearing.

---

[8] At the hearing on December 3, 2009, Ms. Sahagun stated that because of her inability to review all of the discovery and meet with her client, she was not able to respond to the government plea offer.  Ms. Sahagun ignores the fact that government counsel informed her of a possible plea deal on September 8, 2009, some seven weeks before she met with her client on October 29, 2009.  Ms. Sahagun offers no excuse for not conveying the government's plea offer to defendant.

[9] The California Rules of Professional Conduct impose similar obligations.  See Rule 5-220 (lawyer shall not intentionally, recklessly or repeatedly fail to perform legal services with competence); Rule 3-510 (lawyer shall promptly communicate to client terms and conditions of any offer in criminal matter); see also Rule 3-310(f)(1) (lawyer shall not accept compensation from third party if arrangement interferes with client-lawyer relationship).

The Court exercises caution in invoking its inherent power. See Chambers, 501 U.S. at 50. For the imposition of sanctions to be proper, the Court "must comply with the mandates of due process," id., meaning that the lawyer facing sanctions must be provided with notice and an opportunity to respond, orally or in writing, to the invocation of such sanctions and to justify her actions. Thomas v. Tenneco Packaging Co., Inc., 293 F.3d 1306, 1320-21 (11th Cir. 2002). The Court has offered counsel several opportunities to explain why she did not file a motion to withdraw until five days before trial, why she did not fully review discovery with her client and why she did not prepare for trial on December 7, 2009. On December 3, 2009, the Court issued a written show cause order to this effect. See Order To Show Cause (Doc. #223). On December 4, 2009, Ms. Sahagun e-mailed several documents to the Court: the fee agreement, time entries by counsel and a summary of all time entries.[10] The Court was perplexed by Ms. Sahagun's e-mail because the documents did not directly address the Court's order or include any written explanation by Ms. Sahagun. Accordingly, on December 5, 2009, the Court's staff e-mailed Ms. Sahagun and inquired whether she intended to file a written response to the Court's Order To Show Cause (Doc. #223). Ms. Sahagun did not respond in writing. On December 7, 2009, at the hearing on the Court's order to show cause, Ms. Sahagun stated that she did not stop working on the file. Ms. Sahagun failed to explain, however, why she did not pursue plea negotiations after November 9 – when she told the deputy clerk that she would advise about a plea date within the next week. Moreover, after informing the Court that the case would be a likely plea, counsel worked less than two hours on the case (1.67 hours on November 24 to review the file and discuss the case with defendant's family).

---

[10] It appears that Ms. Sahagun made little or no effort to have the documents *filed* with the Court. The Court directs the Clerk to file these documents under seal.

Ms. Sahagun stated that she was financially unable to visit defendant in order "to move the case forward to resolution." Statement Of Ms. Sahagun At Hearing On December 7; see also Statement Of Ms. Sahagun At Hearing On December 3. Based on the entire record, the only logical explanation is that Ms. Sahagun decided not to schedule a plea date because of a fee dispute with defendant's family.

A dispute over the amount of fees does not justify counsel's conduct.[11] As a practical matter, retained counsel are often required to represent clients without being paid in full. See Roll v. Bowersox, 16 F. Supp.2d 1066, 1078 (W.D. Mo. 1998). Courts presume, however, that the attorney will subordinate her pecuniary interests and honor her primary professional responsibility to her client. See United States v. Akwuda, 208 F.3d 204, 2000 WL 311051, at *1 (2d Cir. 2000); United States v. O'Neill, 118 F.3d 65, 71-72 (2d Cir. 1997); United States v. DiCarlo, 575 F.2d 952, 957 (1st Cir.), cert. denied, 439 U.S. 834 (1978); see also Motta v. Dist. Dir., Immigration & Naturalization Serv., 869 F. Supp. 80, 89 (D. Mass. 1994) (attorney dissatisfaction with fee arrangement not legitimate excuse for filing untimely appeal), vacated on other grounds, 61 F.3d 117 (1st Cir. 1995); United States v. Wright, 845 F. Supp. 1041, 1073 n.35 (D.N.J.) (nonpayment of fees does not establish conflict of interest of type which would establish ineffective assistance; lawyers are required to provide zealous advocacy regardless of criminal defendant's failure to pay legal fees), aff'd, 46 F.3d 1120 (3d Cir. 1994). Even though breach of a fee arrangement may constitute sufficient grounds to withdraw, see Kansas Rules of Professional Conduct, Rule 1.16(b)(3), counsel is obligated to continue to vigorously represent her client unless and until the Court permits her to

---

[11] Ms. Sahagun decided to give defendant's family an opportunity to pay the agreed fee. Ms. Sahagun's flexibility on the deadline to pay could be otherwise commendable if *Ms. Sahagun had continued to diligently represent her client*.

withdraw.[12] See Kansas Rules of Professional Conduct, Rule 1.3 (lawyer shall act with reasonable diligence and promptness in representing client). Based on counsel's failure to show cause why she did not file a motion to withdraw until five days before trial, why she did not fully review discovery with her client and why she was not prepared for trial on December 7, 2009, the Court finds that sanctions are appropriate.

**III.    Amount Of Sanctions**

Where an attorney's conduct could be adequately sanctioned under a specific statute or rule, the Court ordinarily should rely on the statute or rule rather than its inherent power. See Chambers, 501 U.S. at 49; see also Martin v. Brown, 63 F.3d 1252, 1265 (3d Cir. 1995) (inherent power should be reserved for cases where conduct of party or attorney is egregious and no other basis for sanctions exists). Because no statute or rule directly applies to counsel's conduct in this case, the Court imposes sanctions under its inherent authority. In exercising its inherent authority, the Court may exercise its discretion to choose the most appropriate sanction under the circumstances. The purposes of sanctions include (1) deterring future litigation abuse, (2) punishing present litigation abuse, (3) compensating victims of litigation abuse and (4) streamlining court dockets and facilitating case management. White v. Gen. Motors Corp., Inc., 908 F.2d 675, 683 (10th Cir. 1990),

---

[12]    A conflict may arise when a client's interests are adverse to his lawyer's pecuniary interests. See Daniels v. United States, 54 F.3d 290, 294 (7th Cir. 1995). The mere existence of an outstanding debt to counsel, however, does not raise an actual conflict. See United States v. Ohiri, 287 Fed. Appx. 32, 38 (10th Cir. 2008) (fee dispute and attorney motion to withdraw for that reason do not raise conflict of interest). If defendant's failure to pay a fee creates a conflict of interest for counsel in a particular case, counsel must promptly seek to withdraw from the case. See Kan. R. Prof. Conduct 1.7(a)(2) (lawyer shall not represent client if representation involves concurrent conflict of interest including where substantial risk exists that representation will be materially limited by personal interest of lawyer).

cert. denied, 498 U.S. 1069 (1991).[13] The primary goal of sanctions is to deter misconduct. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 398 (1990). In considering the imposition of sanctions, the Court must consider on a case-by-case basis whether counsel's failure was substantially justified or whether other circumstances make the imposition of sanctions inappropriate. In re Westinghouse Elec. Corp. Uranium Contracts Litig., 563 F.2d 992, 997 (10th Cir. 1977) (citing Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers, 357 U.S. 197 (1958)).

To award attorney fees under the Court's inherent powers, the Court must find that "counsel's conduct constituted or was tantamount to bad faith." Morris, 758 F.2d at 1357 n.7 (quoting Roadway, 447 U.S. at 767) (internal quotation marks omitted). Subjective bad faith is not necessarily required, however, for the Court to impose sanctions under its inherent authority. See In re Endrex Invs., Inc., 111 B.R. 939, 947 (D. Colo. 1990); see also Braley v. Campbell, 832 F.2d 1504, 1512 (10th Cir. 1987) (conduct that constituted or was tantamount to bad faith); McCandless v. Great Atl. & Pac. Tea Co., 697 F.2d 198, 200 (7th Cir. 1983) (attorney who acts with "an empty head and a pure heart" should be responsible for consequences).[14]

---

[13] While White involved sanctions under Rule 11, its principles apply equally to sanctions under other rules or the Court's inherent authority. See Law v. National Collegiate Athletic Ass'n, 167 F.R.D. 464, 478 n.22 (D. Kan.) (applying to sanctions under Rules 26 and 37 of the Federal Rules of Civil Procedure), vacated on other grounds, 96 F.3d 1337 (10th Cir. 1996).

[14] In addition, several courts have held that the bad faith (or tantamount to bad faith) requirement only applies to assessment of attorney fees against a party or counsel. The Eighth Circuit has held as follows:

> Both Roadway and Chambers . . . discuss the narrow requirement that a district court assessing attorneys' fees against a party or its counsel find that the party had "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 258-59, 95 S. Ct. 1612, 1622, 44 L.Ed.2d 141 (1975).

(continued...)

Despite her representation of defendant for some 100 days and her receipt of $17,000 in fees, Ms. Sahagun has not shown that she advanced the posture of this case in any material respect. On the other hand, after the Court re-appointed her on December 3, 2009, Ms. Rokusek secured a formal plea offer from government counsel in less than six hours. Ms. Sahagun could and should have accomplished this task by the end of September. At a minimum, she should have consulted with her client about the standard plea offer which government counsel conveyed on September 8. Ms. Sahagun did not materially advance the posture of this case because of her fee dispute with defendant's family. The Court finds that counsel's conduct in this case was "tantamount to bad faith." Roadway, 447 U.S. at 767. Viewed objectively, counsel's conduct manifested a blatant and gross disregard of her professional duties to her client. Counsel's sole reason for her conduct was a fee dispute. As explained above, counsel's explanation is unreasonable and a clear violation of Rules 1.3 and 1.4 of the Kansas Rules of Professional Conduct.

---

[14](...continued)
Although Roadway ends with a statement that a finding of bad faith "would have to precede any sanction under the court's inherent powers," the entire opinion discusses only the assessing of attorneys' fees. Roadway, 447 U.S. at 767, 100 S. Ct. at 2465. We do not believe Roadway extends the "bad faith" requirement to every possible disciplinary exercise of the court's inherent power, especially because such an extension would apply the requirement to even the most routine exercises of the inherent power. See, e.g., Anderson v. Dunn, 19 U.S. (6 Wheat) 529, 5 L.Ed. 242 (1821) (discussing the power to "impose silence, respect, and decorum"). We find no statement in Roadway, Chambers, or any other decision cited by the parties, that the Supreme Court intended this "bad faith" requirement to limit the application of monetary sanctions under the inherent power.

Harlan, 982 F.2d at 1260 (footnote omitted). But cf. In re Walker, 532 F.3d 1304, 1309 (11th Cir. 2008) (to impose sanctions under inherent powers, court must find bad faith); In re Mroz, 65 F.3d 1567, 1575 (11th Cir. 1995) (same). The Court need not address whether the bad faith (or tantamount to bad faith) requirement applies to this sanctions order. Counsel's conduct satisfies the requirement that her misconduct was tantamount to bad faith.

To adequately deter other attorneys from similar misconduct and to punish Ms. Sahagun for her conduct, the Court imposes sanctions against Ms. Sahagun in the amount of $6,000. See White, 908 F.2d at 684 (appropriate sanction should be least severe sanction adequate to deter and punish); see also United States v. Johnson, 327 F.3d 554 (7th Cir. 2003) (misconduct that is merely questionable warrants less severe sanction no matter how "dimwitted" the offenders or how badly they "muck up" case); Diettrich v. N.W. Airlines, Inc., 168 F.3d 961, 964 (7th Cir. 1999) (when resorting to inherent power, punishment must fit crime).[15]

**IT IS THEREFORE ORDERED that on or before January 19, 2010, Rosa Elena Sahagun shall pay $6,000 as sanctions to the Clerk of the Court. The Clerk shall designate such funds for reimbursement of counsel under 18 U.S.C. § 3006A. If Ms. Sahagun fails to pay the sanctions by January 19, 2010, she shall be subject to sanctions for contempt of court including, without limitation, a fine or imprisonment.[16] See 18 U.S.C. § 401(3) (court may punish by fine or imprisonment contempt of its authority including disobedience to its lawful order).**

**IT IS FURTHER ORDERED** that Ms. Sahagun's oral motion to withdraw (Doc. #224) be

---

[15] The Court notes that Ms. Sahagun received $17,000 under the fee agreement, but that she paid Mr. Atcheson $5,000 of that amount to serve as local counsel. In addition, Ms. Sahagun incurred unreimbursed expenses for her trip to visit her client on October 29, 2009 and for her trip to Kansas City for the hearing on the Court's order to show cause. In these circumstances, the Court finds that a sanction of $6,000 (half of the retained amount of $12,000) is the least severe sanction which is adequate to deter others from similar misconduct and to punish Ms. Sahagun. The Clerk shall designate Ms. Sahagun's payment for reimbursement of counsel under 18 U.S.C. § 3006A. In this manner, the sanctioned amount will also help reimburse the Court for payment to appointed counsel for services which were or should have been performed by Ms. Sahagun.

[16] **In the event Ms. Sahagun fails to pay the sanctions by January 19, 2010, the Court will hold a hearing to address further sanctions under 18 U.S.C. § 401(3) on Monday, January 25, 2010 at 7:30 a.m. in Courtroom 476, United States Courthouse, 500 State Avenue, Kansas City, Kansas 66101. If such a hearing is necessary, Ms. Sahagun shall appear in person at the hearing.**

and hereby is **SUSTAINED**.

The Clerk is directed to send a copy of this order to the State Bar of California, Chief Trial Counsel, 1149 South Hill Street, 10th Floor, Los Angeles, CA 90015-2299.

Dated this 7th day of January, 2010 at Kansas City, Kansas.

s/ Kathryn H. Vratil  
KATHRYN H. VRATIL  
United States District Judge